```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

ASSIA BOUNDAOUI,                  )  Docket No. 17 C 4782
                                  )
              Plaintiff,          )  Chicago, Illinois
                                  )  June 20, 2019
         v.                       )  9:36 a.m.
                                  )
FEDERAL BUREAU OF INVESTIGATION   )
and UNITED STATES DEPARTMENT OF   )
JUSTICE,                          )
                                  )
              Defendants.         )


            TRANSCRIPT OF PROCEEDINGS - Status
         BEFORE THE HONORABLE THOMAS M. DURKIN


APPEARANCES:


For the Plaintiff:    MS. ALEXA POLETTO (via telephone)
                      Sidley Austin LLP
                      787 Seventh Avenue
                      New York, NY 10019


For the Defendants:   MS. MARCIA K. SOWLES
                      United States Department of Justice
                      Civil Division, Federal Programs Branch
                      20 Massachusetts Avenue N.W.
                      Washington, D.C. 20530


Court Reporter:       LAURA R. RENKE, CSR, RDR, CRR
                      Official Court Reporter
                      219 S. Dearborn Street, Room 1432
                      Chicago, IL 60604
                      312.435.6053
                      laura_renke@ilnd.uscourts.gov
```

```
1        (In open court.)
2             THE CLERK:  17 C 4782, Boundaoui v. FBI.
3             And I need to get Ms. Poletto on the phone.
4        (Clerk places telephone call.)
5             MS. POLETTO:  Hello.  This is Alexa.
6             THE CLERK:  Hi.  Good morning.  It's Sandy with Judge
7    Durkin calling on 17 C 4782, Boundaoui v. FBI.
8             THE COURT:  All right.  Good morning.
9             MS. POLETTO:  Hi.
10            THE COURT:  Let's have --
11            MS. POLETTO:  Good morning.
12            THE COURT:  -- everyone -- everyone identify
13   themselves for the record, starting first with the person on
14   the phone.
15            MS. POLETTO:  This is Alexa Poletto.  I'm an attorney
16   for the plaintiff.
17            And I apologize.  My client called in on the usual
18   dial-in.  I don't know if it's possible to open that line or if
19   I should conference her in.  We thought we would be using the
20   Court's dial-in, because she's, I think, on that line.
21            THE COURT:  Uh ...
22            THE CLERK:  Did I do a minute order that said for
23   everybody to call in on that line?
24            MS. POLETTO:  You did not, and I apologize.
25            THE CLERK:  I have to know in advance.
```

1       THE COURT: Yeah.
2       MS. POLETTO: Okay. That's fine. We'll just proceed
3  as you like. Sorry. Sorry, your Honor.
4       THE COURT: Okay. And let's have the attorneys in
5  court identify themselves.
6       MS. SOWLES: Marcia Sowles from the Department of
7  Justice.
8       THE COURT: All right. Good morning.
9       MS. WAWZENSKI: And Linda Wawzenski from the
10 U.S. Attorney's Office on behalf of defendants.
11      THE COURT: All right.
12      Good morning, Ms. Sowles. I heard you on the phone a
13 lot. You've never been to court before.
14      MS. SOWLES: Right.
15      THE COURT: So good morning.
16      Okay. We're up on your motion for partial summary
17 judgment. And there was an objection -- a letter objection
18 filed by the plaintiff to two -- on two issues. The first is
19 that -- whether or not there was -- asking opposing counsel
20 whether there's an objection to the motion. Is there an
21 objection to the motion by plaintiffs?
22      MS. POLETTO: Yes, there is, your Honor.
23      THE COURT: All right. Well, we solved that. There
24 is an objection, so this is not an uncontested motion.
25      The other is this summary judgment practice, which I

1   will candidly admit is not in the Federal Rules of Civil
2   Procedure.  It's an idiosyncrasy I have that I picked up from a
3   judge in this building who has since passed away, Judge Shadur,
4   where he always wanted parties -- typically, in many cases,
5   parties to explain why they were going to file a summary
6   judgment motion.  And I often have a chambers conference in
7   advance.
8           Not on every case.  I don't do it on pro se cases.  I
9   don't do it on other cases where it's obvious a summary
10  judgment motion should be filed.
11          But I do it a lot of times in cases like civil rights
12  cases, excessive force cases where it's -- I really want to
13  hear from the lawyers why there's a contested factual issue
14  rather than going through the expense and time of preparing a
15  summary judgment motion that may be doomed to failure.
16          So although it is a procedure on my web page, it was
17  not followed here.  I know Ms. Sowles has repeatedly said these
18  cases are typically resolved by summary judgment.  I'm not
19  going to strike the motion and order this chambers conference
20  to take place when we can just talk about it right now.
21          MS. SOWLES:  Okay.  Your Honor, actually, at the --
22  you know, our last status conference, I indicated that we would
23  be filing a motion for summary -- partial summary judgment.
24  And you had said that while, you know, you're not required --
25  you know, requiring, you explicitly stated that "If you want to

1  accompany it with this motion for summary judgment, you're free
2  to do so." So that's what we did.
3          As we explained, that -- you know, some -- that
4  Freedom of Information cases, and as we cited in our brief, are
5  routinely resolved on summary judgment. And that's really
6  because they're -- that they're not like -- I think, you know,
7  that they're -- although they involve documents, it's not a
8  discovery matter. The old -- it's a -- you know, it relies on
9  a statute and that the -- there's basically three questions:
10         First of all, did the request reasonably describe the
11 records sought? Second, was there a reasonable search for the
12 records? And, third, if there are exemptions claimed and
13 they're contested, were those exemptions proper?
14         And that's a -- you know, we're at a stage here where
15 we believe that, you know, it's -- I mean, these are issues
16 that are resolved by summary judgment. And we have filed a
17 motion for summary judgment. If the plaintiff has -- you know,
18 is contesting it, that's the proper procedure that it's
19 resolved. And I -- they're really sort of, like, you know,
20 administrative, you know, procedure-type cases.
21         They're -- you know, it's not a case where there is,
22 you know, a substantive, you know, complaint as to whether or
23 not, you know, a particular investigation was improper.
24 They're not like discrimination cases or tort cases.
25         The -- you know, the ultimate issues are just those

1 three that I described, and those are issues that are properly
2 resolved by summary judgment. And we filed our motion. If
3 the -- you know, we believe that the proper way to proceed is
4 to set a -- a briefing schedule.
5         THE COURT: Well, I'll give plaintiffs a chance to
6 respond, but I have two questions. One is you represented in
7 your motion that all of your compliance with the FOIA requests
8 would be by -- I think by now, by today --
9         MS. SOWLES: Right. And --
10         THE COURT: -- or by earlier this week.
11         MS. SOWLES: Yeah, and we did.
12         In compliance with your order, all the agencies that
13 had been referred documents for consultation reviewed those
14 documents, and by June 7th.
15         But it took a long -- a little time for FBI to
16 actually consolidate. And the -- they sent out their response
17 on the 14th by Express Mail, and it was received by plaintiff's
18 counsel on Monday.
19         THE COURT: All right.
20         And, Ms. Poletto, do you agree? Did you receive those
21 documents?
22         MS. POLETTO: We received them over a week late, your
23 Honor, later -- a week later than your Honor had ordered them.
24 That's correct, sir --
25         THE COURT: All right. But you've got them --

1               MS. POLETTO:  -- your Honor.

2               THE COURT:  You've got them now.

3               MS. POLETTO:  Yes.

4               THE COURT:  Okay.  Now, the other question I had --

5    then I'll give plaintiff's counsel a chance to respond.  The

6    other question is, why do you call it a partial motion for

7    summary judgment?

8               MS. SOWLES:  Okay.  Your Honor, as I said, there's

9    three questions.

10              One is do -- does the request reasonably describe the

11   records sought, and with regard to portions of that, that's an

12   issue.

13              Second, with regard to the portion where she wanted

14   the file for Operation Vulgar Betrayal, was there a reasonable

15   search for that.  The only issue that we're not seeking summary

16   judgment at this time is on the exemptions claimed.  And that's

17   because there's, you know, 33,000 pages and that many of the

18   pages have redactions.  And we've just completed the search.

19              We would hope that we could narrow the issue

20   because -- and we're providing plaintiff time to identify what

21   issues, if any, you know, withholding she's going to challenge.

22   We've -- so that would be an issue that would be resolved

23   later.

24              The reason that it's in this -- we're seeking partial

25   summary judgment at this time is that plaintiff had been

1  raising the issue of whether or not we should be searching for
2  this unidentified investigation that she believes was
3  somehow -- continued the work.
4        And because that's an issue and, you know, we've --
5  we're filing summary judgment -- partial summary judgment on
6  that case and also on the reasonable search, that, you know, we
7  conducted a search for the file and, you know, we explained
8  that in great detail in the declaration of David Hardy.
9        So those are the -- you know, we feel it's ripe.  I
10  mean, you know, those two issues are ripe, and this would
11  then -- there's no reason to, you know, continue, you know,
12  this -- the dispute over whether we've done that.
13        THE COURT:  All right.  Ms. Poletto, I'll hear your
14  response really to -- not to the substantive issues that are
15  raised in the summary judgment motion, but whether there's a
16  reason not to simply set a briefing schedule on this at this
17  time.
18        MS. POLETTO:  Absolutely.  Thank you, your Honor.
19        I'd like to note that the government has actually not
20  responded, in our opinion, to your order of one month ago --
21  or, actually, more than one month ago, May 7th, your Honor.
22        You had ordered a declaration from an FBI agent, an
23  affidavit, [unintelligible] investigation associated with or
24  continued the work of Operation Vulgar Betrayal.  And the
25  government didn't do that.  If you look at the declarations,

1  they simply said that OVB was closed and not reopened.

2  So the very order, your Honor, has not even been met.
3  And -- and so in the first instance, I do take issue with that,
4  and I'm happy to address it because I have detailed
5  information, your Honor, as to why this is just -- it's not
6  possible.

7  So they haven't answered your question.  And all I can
8  deduce from that, your Honor, is that in being unable to answer
9  your order, this investigation, the associated investigation
10  that continued the work of OVB, does, in fact, exist.  And so
11  that's the first issue here, your Honor.

12  The second is we do not think there was sufficient
13  detail in these affidavits as to how it was explored.  It does
14  say that they were closed and why they know it was closed.  We
15  never disputed that OVB was closed, your Honor.

16  Our issue is that there is an associated investigation
17  that continued the work of.  We noted in the prior hearing when
18  we met before your Honor that this investigated Muhammad Salah.
19  There are court documents that indicate Muhammad Salah was
20  indicted.  So if the government is saying that there was no
21  investigation that resulted in the indictment of Muhammad
22  Salah, I find that very difficult to believe.

23  So in the first instance, your order was not met.  In
24  the second instance, the government said that they -- if
25  they -- if they were going to file a motion for partial summary

1 judgment, that was going to be in July because there were
2 various holidays that people were going on. And this, instead,
3 was filed on June 7th before the final production was even
4 provided.
5 So, in summary, in our view, in the great -- in the
6 big picture, your Honor, this -- this -- this request is not
7 completed, not even close to being completed. The documents
8 have not been produced in the first instance.
9 Second, we do not think these affidavits are
10 sufficient, and we believe that should be remedied because the
11 government did not follow your order.
12 And, third, importantly, the issue of waivers that
13 your order -- your Honor ordered to be addressed has not been
14 sufficiently addressed, in our view. The government has still
15 not returned one file responsive to someone who was
16 investigated during Operation Vulgar Betrayal. You know,
17 plaintiff's own mother was investigated and interviewed in
18 this, and they never returned her file.
19 I just find this an insufficient response to your
20 order. I think that this motion for partial summary judgment
21 is incredibly premature and goes against your court -- your
22 Honor's own rules. And so, you know, the fact that this is --
23 this is our -- this is our view.
24 I'm happy to go into -- you know, I can list for the
25 Court, and I'm going to submit a letter after this hearing from

1 my client of all the public documents that indicate the subject
2 of Operation Vulgar Betrayal. Muhammad Salah was indicted in a
3 later case, *U.S.A. v. Marzook*, and the public documents
4 indicate that these -- that that -- that indictment was
5 directly related to Operation Vulgar Betrayal.
6 For the government to say that there was no associated
7 investigation I find -- I'm very surprised to hear that. And I
8 don't think that the FBI's affidavit answered your question in
9 our prior -- your order in our prior hearing.
10 THE COURT: Well, there's two -- two issues you're
11 raising. One is if I issued an order -- you've got the
12 transcripts. I haven't reviewed them. If you -- if I issued
13 an order that has not been complied with and I put a date for
14 it, as long as it's not a trivial blowing of the date, which is
15 not going to be something that's going to be sanctioned, as
16 long as it's -- but if you believe there's been a disregard of
17 an order, then you file a rule to show cause.
18 The question of whether there was a follow-up
19 investigation or other investigations or that the compliance
20 you've gotten has been incomplete is probably something you can
21 address in your response to the summary judgment motion.
22 If you think the affidavit is deficient, if you think
23 that the documents they've turned over can't possibly be
24 everything that is there or that the -- that the request asks
25 for more than what they think they are obligated to give you,

1     that really is what they're basing their summary judgment
2     motion on, and you simply oppose it.
3             And then I -- I -- like any other summary judgment
4     motion, I see if there's a fact issue raised or not.
5             I think these are all bench trials, aren't they?
6             MS. WAWZENSKI:  There's really never a trial, Judge.
7     I mean, these are like administrative record reviews --
8             THE COURT:  Yeah.
9             MS. WAWZENSKI:  -- in which there is a record.  And
10    the record here would be the documents that we've presented,
11    along with a *Vaughn* index, which is the index that indicates
12    what exemptions we have invoked.  And then it's usually
13    cross-motions for summary judgment.
14            There is no trial.  There are no depositions.  There
15    are no interrogatories.  It's -- it's like a record review.
16            THE COURT:  Okay.  So it's -- it's almost a bench
17    trial without witnesses because it's -- if there are fact
18    disputes that come up, I need to resolve them in the context of
19    a cross-motion or in the context of your opposition that's
20    going to be filed.
21            So I -- I think if -- if there's a disregard of the
22    order, the -- the remedy is to file a rule to show cause.
23            If there is a -- I think you just need to file an
24    opposition to this if you think that they are incorrect and
25    have improperly conducted their search.  I think they have an

1 interpretation of what your request was that may be different
2 than yours, and that's something I need to resolve. I need to
3 see the request. I need to see how they interpreted it and
4 then how you believe it should be interpreted. And I -- I
5 think that's how this has to go.
6     I'll ask first the government. Do you disagree?
7     MS. SOWLES: No. I mean, that's -- if she has
8 complaints, she should file an opposition. That's the
9 appropriate --
10     THE COURT: I have no doubt she will.
11     MS. SOWLES: Yeah.
12     THE COURT: But I just want to make sure that that
13 is -- at least from your perspective. I'm going to hear hers,
14 Ms. Poletto's, in a minute. But from the government's
15 perspective, you believe that's how this ought to proceed?
16     MS. SOWLES: Yes, your Honor.
17     THE COURT: Ms. Poletto, do you object to that
18 process?
19     MS. POLETTO: If that's your Honor's guidance, we
20 agree with it.
21     Your Honor, I just for the record would like to state
22 our preference is -- is that, you know, the government would
23 have to -- you know, we don't think they've met their
24 obligation. We don't think they've -- they've answered the
25 FOIA request. But if you would like that in an opposition

1     motion, you know, we'll follow your Honor's guidance.

2                Our -- our request would be, however, your Honor,
3     that, you know, a proper briefing schedule be set. And also we
4     have asked the government for a *Vaughn* index, which they have
5     not provided.

6                THE COURT: All right. What is the obligations to
7     provide one at this point?

8                MS. SOWLES: Okay. With regard to that, as we said,
9     we just completed our production. And as we indicated, we did
10    not move for summary judgment yet on that because it's the
11    plaintiff is -- we're -- because there are 33,000 pages, we
12    would hope that she would be able to narrow it. For instance,
13    many of the pages that were redactions are based on
14    exemption 3, on grand jury information. And that's -- you
15    know, it's -- I mean, we can't see how it's hard to contest.

16               But we believe that -- you know, that's not what we're
17    seeking partial summary judgment on at this time. And if she
18    would like to contest some of the withholdings, she should
19    identify those that are -- as we hope we can narrow it.

20               And if we can't narrow it, then what we would
21    recommend, that in cases like this where there's some
22    substantial amount of documents, that we do a sampling. And we
23    would, you know, do that as far as the *Vaughn* --

24               THE COURT: Well, here's what I'll do. You need to
25    meet and confer on the -- it's called a *Vaughn* index?

1      MS. SOWLES:  Right.
2      THE COURT:  All right.  I learn something every day.
3      What is a *Vaughn* index?
4      MS. WAWZENSKI:  It's the -- it's the list of
5 exemptions that we have invoked on documents that we have
6 either withheld or redacted.
7      THE COURT:  Okay.  So it's similar to a privilege log,
8 only -- is there a case called *Vaughn* or something?
9      MS. WAWZENSKI:  Right, yes.
10     MS. SOWLES:  Right.  That was the original case they
11 did it.
12     And for the FBI, there's -- the way that they do it
13 is, again, through a declaration, and that -- alongside the
14 documents, there is an indication as to, you know, the
15 exemptions claim so that the FBI -- and usually Mr. Hardy, you
16 know, discusses that, you know, he -- you know, that these --
17 these pages were withheld on exemption 7(E), and then he
18 explains the basis and then the -- and in his declaration, he
19 footnotes those.
20     MS. WAWZENSKI:  And then typically it is for the
21 plaintiff to then determine which of those exemptions they're
22 going to contest.
23     MS. SOWLES:  Right.
24     MS. WAWZENSKI:  Because sometimes there are some
25 exemptions that they do not contest, and other times there are

1     exemptions that are contested.  And that's what we discussed
2     about narrowing what is really --
3             MS. SOWLES:  Right.
4             MS. WAWZENSKI:  -- at issue with regard to the
5     exemptions.
6             MS. SOWLES:  And in this case, because of the volume,
7     she also knows, you know, based on the redactions and on the
8     pages we withheld in full -- again, we stated the basis for
9     that so that we would hope that she narrows it.  And once she
10    narrows it, then we would submit a *Vaughn* index supporting the
11    basis for those exemptions in more detail.
12            THE COURT:  All right.  Well, Ms. Poletto, I'm going
13    to simply ask you meet and confer with the government on that.
14    If you believe that the -- their obligation to produce a *Vaughn*
15    index is something they haven't complied with, after you've met
16    and conferred and tried to work out a basis to narrow what is,
17    in effect, sounds like, a privilege log under another name,
18    then come in again and move to compel.
19            I'm not encouraging that.  I hope you can reach an
20    agreement on this.
21            The fact that what you say is what usually happens is
22    not necessarily what the law requires; it's just the practice
23    on these cases.  I don't know.
24            And I -- Ms. Poletto, I don't know -- I haven't had a
25    FOIA case go this far before.  I'm not sure I had one, period,

1 but I certainly haven't had one go this far before. So I can't
2 tell you what the practice is, and I can't tell you what the
3 law is.

4 But I -- I think what the government says relating to
5 trying to get a sample on this when there's so many documents
6 sounds like a sound practice, but I'm not compelling it.
7 It's -- I'm going to rely on both of you to -- both sides to
8 meet and confer on this.

9 And if you can't reach agreement, Ms. Poletto, you're
10 free to come in and move to compel, and I'll hear what the
11 government says in response to it. I hope it doesn't come to
12 that.

13 As to the partial motion for summary judgment, I know
14 this may have happened sooner than you thought, Ms. Poletto. I
15 will give you as much time as you want to respond to it. I
16 know that summer is a tough time because of a variety of other
17 schedules. But you tell me how much time you want to respond.
18 Or if you need to consult with your client or with your
19 colleagues, I'll give you time to contact my courtroom deputy
20 with a date where you'd respond. And I'd give the government X
21 amount of dates after that.

22 Are you prepared at this point to talk about when you
23 want to respond?

24 MS. POLETTO: I think I have to consult with my
25 client, your Honor, just to make sure I understand her

1  schedule.  I'm happy to get back to your court within the next
2  hour or two.  I just need to check in with her.
3           THE COURT:  That's fine.  I -- certainly I assume it's
4  going to be at least 30 days or some -- it might even be longer
5  than that.
6           MS. SOWLES:  Yeah.  I would --
7           MS. POLETTO:  Yes.
8           MS. SOWLES:  -- just want to make sure that whatever
9  date she chooses, that because I have some other conflicts
10 and -- you know, and hopefully a planned vacation in --
11 sometime in August that we could work around that.
12          THE COURT:  Well, here's what I'll do.  Why don't
13 you -- Ms. Poletto, why don't you contact Ms. Sowles after
14 you've talked to your client, whether you do that today or
15 tomorrow.  Then contact my courtroom deputy with an agreed
16 briefing schedule.
17          MS. SOWLES:  That sounds like a good plan.
18          THE COURT:  Is that okay with you, Ms. Poletto?
19          MS. POLETTO:  It is.  Thank you, your Honor.
20          THE COURT:  All right.  Let's do it that way.
21          I'll set you for a status about 60 days after the last
22 brief is in, with the hope I can give you a ruling by then.  If
23 we have a ruling earlier, you'll get it in the mail.  If it's
24 not ready in 60 days, I'll have you in for a status.
25          Neither counsel, Ms. Sowles or Ms. Poletto, is

1 required to come in from Washington or New York.  Do it by
2 phone.  And I'll explain sheepishly why I don't have a ruling.
3 But I think that's the route to go.
4     You have mechanisms if you believe orders haven't been
5 followed or a *Vaughn* index hasn't been produced when you
6 believe there's a requirement to produce it.  The mechanism is
7 file a motion.
8     So anything else?  First on the phone.  Ms. Poletto,
9 anything else from your end?
10     MS. POLETTO:  No.  Thank you, your Honor.
11     THE COURT:  Anything else from the attorneys in court?
12     MS. SOWLES:  No, your Honor.
13     THE COURT:  Okay.
14     MS. WAWZENSKI:  Thank you, your Honor.
15     THE COURT:  Thank you all.
16   (Concluded at 9:58 a.m.)
17     C E R T I F I C A T E
18 I certify that the foregoing is a correct transcript, to
19 the extent possible, of the record of proceedings in the
20 above-entitled matter, given the limitations of conducting
21 proceedings via telephone.
22
23 */s/ LAURA R. RENKE*     *July 12, 2019*
   LAURA R. RENKE, CSR, RDR, CRR
24 Official Court Reporter
25