UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASSIA BOUNDAOUI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FEDERAL BUREAU OF ) <br> INVESTIGATION, and UNITED STATES ) <br> DEPARTMENT OF ) <br> JUSTICE, ) <br> Defendants ) <br> _____ ) | Case No. 1:17-CV-04782 <br><br> Honorable Thomas M. Durkin |

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS**

Pursuant to Local Rule 56.1, Defendants Federal Bureau of Investigation ("FBI") and U.S. Department of Justice ("DOJ"), by and through undersigned counsel, hereby submit the following response to Plaintiff's Statement of Additional Facts:

1. On September 30, 2016, Defendant the Federal Bureau of Investigation ("FBI") sent Plaintiff an adverse notice denying her request for expedited processing of her FOIA request. Ex. B Boundaoui Decl.

    Response: Undisputed but immaterial to the two legal issues presented by Defendants' Motion for Partial Summary Judgment, ECF No. 79.

2. On October 14, 2016, the FBI sent Plaintiff an adverse determination notice denying her request for a fee waiver for her FOIA request. Ex. C, Boundaoui Decl.

    Response: Undisputed but immaterial to the two legal issues presented by Defendants' Motion for Partial Summary Judgment, ECF No. 79.

1

3.      On November 10, 2016, Plaintiff wrote to the FBI's FOIA Public Liaison Office requesting to speak to an agency representative about appealing the FBI's denial of her request for a fee waiver, or in the alternative, amending the scope of her request to lower the cost. Ex D, Boundaoui Decl.

>   Response:  Undisputed but immaterial to the two legal issues presented by Defendants' Motion for Partial Summary Judgment, ECF No. 79.

4.      The Public Liaison Office never responded to Plaintiff's November 10, 2016 communications. Boundaoui Decl. ¶7.

>   Response:  Disputed. Contrary to Plaintiff's statement, the FBI did respond. *See* Third Declaration of David Hardy (3d Hardy Decl), ¶¶ 8-19. In any case, this statement is immaterial to the two legal issues presented by Defendants' Motion for Partial Summary Judgment, ECF No. 79.

5.      On December 20, 2016, Plaintiff wrote to the Work Process Unit of the FBI's Record Management Division, once again requesting to discuss "the scope of [her] request and duplication cost" with an agency representative. Ex. E, Boundaoui Decl.

>   Response:  Undisputed but immaterial to the two legal issues presented by Defendants' Motion for Partial Summary Judgment, ECF No. 79. Plaintiff's request related to narrowing the scope of her request for all of the approximately 33,100 pages in the criminal investigative file for Operation Vulgar Betrayal, file number 265-CG-101942.

6.      The Records Management Division never responded to Plaintiff's December 20, 2016 communication. Boundaoui Decl. ¶ 9.

>   Response:  Disputed. Contrary to Plaintiff's statement, the FBI did respond. *See* Third Declaration of David Hardy (3d Hardy Decl), ¶¶ 8-19. In any case, this statement is immaterial to the two legal issues presented by Defendants' Motion for Partial Summary Judgment, ECF No. 79. *See* 3d Hardy Decl. ¶¶ 8-19.

7. The FBI first expressed its view that Plaintiff's FOIA request for the files related to the investigation that continued the work of Operation Vulgar Betrayal did not "reasonably describe the records sought" in Defendants' Opposition to Plaintiff's Motion to Compel Expedited Processing that Defendants filed on September 22, 2017. *Id.* ¶ 11; *see also* ECF No. 37, at 8-10; ECF No. 73, at 203; Tr. 20:18-21, ECF No. 78.

> Response: Disputed.  Although during the administrative process, the FBI did not explicitly state that the portion of Plaintiff's request seeking "files related to the investigation that continued the work of 265-CG-101942" did not "reasonably describe the records sought," as required by 5 U.S.C. § 552(a)(3)(A)(i), the correspondence between the parties made it clear that the only responsive records identified by the FBI were the approximate 33,120 pages contained in the files for criminal investigation code-named Operation Vulgar Betrayal, file no. 265-CG-101942.  Declaration of David Hardy (1st Hardy Decl.) ¶ 8 & Ex. D, ECF No. 35; 3d Hardy Decl. ¶¶ 7-19; *see also* Letter from Plaintiff to FBI dated Nov. 10, 2016 (attached as Ex. D to Boundaoui Dec., ECF 101.  The focus of the discussions between the FBI and Plaintiff during the administrative process was on whether Plaintiff was willing to narrow her request for all of the approximate 33,120 pages of the OVB file in order to expedite the production.  *Id.*

8. To date, neither the FBI nor the DOJ has sent Plaintiff an adverse determination notice denying her FOIA request for "all files related to the investigation that continued the work of 265-CG-101942 in the 2000s." Boundaoui Decl. ¶ 13.

> Response: Disputed.  Although Defendants did not send Plaintiff a separate letter denying that portion of her request, Plaintiff was on notice that the FBI had determined that this portion of her request failed to reasonably describe the record sought.  *See* Defs' Opposition to Pl's. Motion for Expedited Processing, ECF No. 37 at 8-10; Email from Marcia Sowles to Alexa Poletto dated June 28, 2018, Ex. A to Polleto Decl.

3

9. The FBI never requested that Plaintiff clarify her FOIA request. *Id.* ¶ 25.

    Response: Disputed. Plaintiff was on notice that the FBI had determined that this portion of her request failed to reasonably describe the record sought. *See* Defs' Opposition to Pl's. Motion for Expedited Processing, ECF No. 37 at 8-10; Email from Marcia Sowles to Alexa Poletto dated June 28, 2018, Ex. A to Polleto Decl. Plaintiff made no attempt to clarify. Instead, Plaintiff ignored the defect and asserted that the Court's September 26, 2019 Order (ECF No. 40) required the FBI to search for and process records beyond the approximate 33,120 pages contained in the investigative file for the OVB, file number 265-CG-101942, despite the clear language in the order to the contrary. *See* Joint Status Reports, ECF No. 56 ¶ 4; ECF No. 57 ¶ 4; ECF No. 58 ¶ 4; ECF No. 60 ¶ 4; ECF No. 61 ¶ 4; ECF No. 62 ¶ 4; ECF No. 66 ¶ 4; ECF No. 67 ¶ 4.

10. The FBI never afforded Plaintiff the opportunity to clarify her request. *Id.* ¶ 26.

    Response: Disputed. Plaintiff was on notice that the FBI had determined that this portion of her request failed to reasonably describe the record sought. *See* Defs' Opposition to Pl's. Motion for Expedited Processing, ECF No. 37 at 8-10; Email from Marcia Sowles to Alexa Poletto dated June 28, 2018, Ex. A to Polleto Decl. Plaintiff made no attempt to clarify. Instead, Plaintiff ignored the defect and asserted that the Court's September 26, 2019 Order (ECF No. 40) required the FBI to search for and process records beyond the approximate 33,120 pages contained in the investigative file for the OVB, file number 265-CG-101942, despite the clear language in the order to the contrary. *See* Joint Status Reports, ECF No. 56 ¶ 4; ECF No. 57 ¶ 4; ECF No. 58 ¶ 4; ECF No. 60 ¶ 4; ECF No. 61 ¶ 4; ECF No. 62 ¶ 4; ECF No. 66 ¶ 4; ECF No. 67 ¶ 4.

11.    Defendants refused to Plaintiff's offer to meet and confer in order to clarify Plaintiff's FOIA request.  Exhs. A and B, Poletto Decl.

>   Response:  Disputed.   Plaintiff's counsel did not offer to meet and confer to clarify Plaintiff's FOIA until after Defendants filed their motion for partial summary judgment. In the June 2018 email cited by Plaintiff, Plaintiff counsel asks Defendant's counsel to "confirm that it is the Government's position that the only files it is required to review are from 265-CG-101942." Ex. A to Poletto Decl.  In response, Defendant's counsel stated that that "the Government stands by the position articulated in in its Opposition to Motion to Compel Expedited Processing of Plaintiff's Freedom of Information Act Request (ECF No. 37) at 8-10."  In the cited opposition, Defendants explained that portions of her requests failed to reasonably describe the records sought.

12.    In responding to FOIA requests, the Department of Justice and the Federal Bureau of Investigation are bound by the procedures outlined in 28 C.F.R. 16, Subpart A. "Procedures for Disclosure of Records Under the Freedom of Information Act."

>   Response:  Undisputed.  Defendants state that this is a legal conclusion.

13.    On October 10, 2017, Plaintiff provided the FBI with privacy waivers for 179 individuals.  Boundaoui Decl. ¶ 14; Hardy Decl. ¶ 34, ECF 94.

>   Response:  Defendants admit that, after this case was in litigation, the FBI agreed to allow Plaintiff to submit privacy waivers.  Without such privacy waivers, the names of individuals mentioned in the FBI records would normally be protected by Exemptions 6 and 7(C) of the FOIA, 5 U.S.C. §§ 552(b)(6) and (7)(C).  Plaintiff's counsel provided the FBI with privacy waivers for 179 individuals.  This fact is immaterial to the legal issues presented by Defendants' Motion for Partial Summary Judgment.  *See* Reply in Support of Defendants' Motion for Partial Summary Judgment, at 7-10.

14. The FBI has not produced a single document concerning any of the individuals for whom Plaintiff submitted privacy waivers. Boundaoui Decl. ¶ 15.

> Response: Undisputed but immaterial to the legal issues presented by Defendants' Motion for Partial Summary Judgment. *See* Reply in Support of Defendants' Motion for Partial Summary Judgment, at 7-10.

15. Defendants have not informed Plaintiff whether any of the sub-files concerning the individuals for whom Plaintiff submitted privacy waivers exist within file 265-CG-101942 or whether they are withheld pursuant to a FOIA exemption. Defendant have only represented that the FBI did not protect any of these individuals' name pursuant to any privacy concerns. ECF No. 75; Hardy Decl. ¶ 34, ECF No. 94.

> Response: Disputed but immaterial to the legal issues presented by Defendants' Motion for Partial Summary Judgment. *See* Reply in Support of Motion for Partial Summary Judgment at 7-10. Pursuant to the Court's September 26, 2017 Order, the FBI informed Plaintiff that it had compared the names of the individuals submitting privacy waivers with the subjects of the sub-files in the file for the OBV investigation, file number 265-CG-101942, and found no matches. 2d Hardy Decl., Ex. A, ECF 94-1 at 29 (letter to Plaintiff from David Hardy dated November 16, 2017); Fourth Joint Status Report, ECF No. 45, ¶ 3; Fifth Joint Status Report, ECF No. 46, ¶ 3b; *See also* 3d Hardy Decl.¶ 19. Defendants further state that FBI properly utilized and considered the privacy waivers as it reviewed and processed the records contained in the main volumes and the sub-files of the file 265-CG-101942. 2d Hardy Decl. ¶¶ 34-37. Defendants admit that to the extent that the names of any of these individuals may have appeared in the records, the FBI did not withhold the names on the basis of privacy concerns – Exemptions 6 and 7(C). 2d Hardy Decl. ¶¶ 34-37; 3d Hardy Decl. ¶ 20-21.

16. The FBI has only processed documents responsive to that portion of Plaintiff's FOIA submission requesting "all files related to the intelligence investigation code-named Operation Vulgar Betrayal, 265-CG-101942, which began around 1995." *See* ECF No. 37 at 8-10; Exhibit A to Hardy Decl., the FBI's production cover letters for the months October 2017 through June 2019, ECF No. 94.

> Response: This allegation misstates Plaintiff's FOIA request. To the extent that this allegation was intended to state that "[t]he FBI processed documents responsive to that portion of Plaintiff's FOIA submission requesting 'the main file and all sub-files for the criminal investigation code-named Operation Vulgar Betrayal, 265-CG-101942, which began around 1995,'" the FBI states that in addition to processing the records located in that file, the FBI also located and processed (1) the five audio tapes referenced but not physically contained in the file and (2) an additional investigative file (file no. 272B-CG-111258) which was referenced in a document in the OVB file as a file "mirroring" the OVB file. 2d Hardy Decl., ¶¶ 31, 33, 38.

17. The 1993 arrest and conviction of Mohammed Salah, a resident of Bridgeview, Illinois, by the Israeli military court on charges that he illegally transferred funds to Hamas was the impetus for Operation Vulgar Betrayal. Exhibit B to the Hardy Decl. at 77, ECF No. 94.

> Response: Disputed but immaterial to the issues presented by Defendants' Motion for Partial Summary Judgment. Operation Vulgar Betrayal was opened in July 1996 to investigate possible illegal transfers of laundered money by the North American Islamic Trust and other unknown groups and individuals to Hamas, a known terrorist group. 2d Hardy Decl. ¶ 32. An electronic communication indicates that the North American Islamic Trust had given Quaranic Literacy Institution approximately $437,000. Ex. B to 2d Hardy Decl., ECF No. 94-1at 74. The communication mentions that Mr. Salah was an employee of the Quaranic Literacy Institute at the time of his arrest. *Id.* The statement in paragraph 17 is immaterial to the issues presented by Defendants' Motion for Partial

>Summary Judgment.  Operation Vulgar Betrayal was closed in 2000 and did not reopen under another name.  William Decl. ¶¶ 2-4; 2d Hardy Decl. ¶ 22.  Moreover, Plaintiff's request did not mention Mr. Salah in her request or ask for records regarding his well-known prosecution.

18. After September 11, 2001, authoritative news sources such as the *Chicago Tribune* and the *Wall Street Journal* began reporting that, although Operation Vulgar Betrayal closed in 2000, federal officials were conducting another investigation into Chicago-area fundraising for Hamas. Boundaoui Ex. H, May 12, 2002, *Orlando Sentinel* article ("[Justice Department officials] said that though Wright's part of the investigation was closed, the inquiry had become part of a 'continuing national terrorism investigation, which is ongoing.'"); Ex. I, August 22, 2004 *Chicago Tribune* article ("By early 2000, [Operation Vulgar Betrayal] was closed . . . Then came Sept. 11 attacks.  The Government revived its Hamas fundraising investigation.  FBI officials said it was a new investigation, this time with no code name."), Ex. J., Nov. 26, 2000 *Wall Street Journal* article ("The investigation ended without indictments . . . but recently restarted."); Ex. L., Aug. 21, 2004 *Chicago Tribune* article ("The case against Salah, code-named Vulgar Betrayal, began in 1996, but was scrapped four years later amid infighting among agents, according to a former government insiders. It was revived after the terrorist attacks on Sept. 11, 2001.")

>Response:  Defendants admit that the Operation Vulgar Betrayal investigation was closed in 2000.  *See* 2d Hardy Decl. ¶ 22; William Decl ¶¶ 2-3.[1]  Defendants do not dispute that the FBI conducted another investigation that led to the indictment of Mohammed Salah and others in August 2004.  Defendants admit that Plaintiff accurately quotes portions of the cited news articles, but Defendants dispute Plaintiff's characterization of the news articles as authoritative.  In any case, Plaintiff's statement in in paragraph 18 is immaterial to the issues presented by Defendants' Motion for Partial

---

[1] As explained by Mr. Hardy, the closing memorandum noted by Supervisory Special Agent Williams indicates that the closure date for the actual investigation occurred in August 2000, the administrative functions relating to the closing of the file by Records Management personnel occurred later; the time lag between the August 2000 investigative closure and April 2, 2001 administrative closure is not unusual.  2d Hardy Decl. at 20 n.12.

Summary Judgment because Plaintiff's request did mention Mohammed Salah or any Hamas fundraising investigation after September 11, 2001.

19. On August 27, 2004, a federal grand jury indicted Mr. Salah on terrorism-funding charges. Ex. G, Boundaoui Decl, Indictment, *United States v. Marzook,* No. 03-CR0978 (N.D. Ill. Aug. 27, 2004).

Response: Undisputed but immaterial. Plaintiff's FOIA request did not mention the indictment of Mr. Salah. If the records for that criminal investigation are what Plaintiff sought, she could have identified that investigation in her request.

Respectfully submitted,
JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

s/Marcia K. Sowles
MARCIA K. SOWLES
DC Bar No. 369455
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W. Room 11028
Washington, D.C. 20005
Tel.: (202) 514- 4960
Fax: (202) 616- 8470
E-mail: marcia.sowles@usdoj.gov

Attorneys for Defendants