### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ASSIA BOUNDAOUI,

        Plaintiff,

        v.

FEDERAL BUREAU OF INVESTIGATION,
and UNITED STATES DEPARTMENT OF
JUSTICE,

        Defendants.

No. 17 CV 4782

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Plaintiff Assia Boundaoui brings this action against the above-captioned Defendants (collectively, the "Government") under the Freedom of Information Act ("FOIA"). In response to Plaintiff's FOIA requests, the Government produced, redacted, and withheld certain documents. The parties now bring cross-motions for partial summary judgment as to the propriety of the Government's redactions and withholdings. For the reasons stated below, the Government's motion for partial summary judgment (R. 183) and Plaintiff's motion for partial summary judgment (R. 209) are granted in part and denied in part.

## Background

Plaintiff is a journalist and documentary filmmaker who produced *The Feeling of Being Watched*, a 2018 documentary regarding the FBI's criminal investigation Operation Vulgar Betrayal ("OVB"). R. 209 at 10–12. OVB began around 1995 and continued into the early 2000s. *Id*. Plaintiff contends that as part of OVB, the FBI

1

conducted surveillance and investigation of the Arab and Muslim communities in Bridgeview, Illinois. *Id.* Hoping to rely on OVB records during production of the documentary, Plaintiff submitted FOIA requests to the Government in September 2016, requesting the "main file and all sub-files" for OVB as well as "all files related to [OVB]," all "photographic, video, and audio media associated with [OVB]," and all "formal write-ups of investigative work done by the FBI." *Id.* at 12. Plaintiff also sought expedited processing. *Id.*

Plaintiff filed this lawsuit on June 26, 2017, after the Government denied her request for expedited processing. R. 209-2 ¶ 13. On September 26, 2017, the Court ordered the Government to process responsive documents at a rate of 3,500 pages per month. *Id.* ¶ 14. On October 10, 2017, Plaintiff provided the Government with privacy waivers for 179 individuals. *Id.* ¶ 15. Plaintiff contends that the Government interviewed these individuals as part of OVB. *Id.* On June 7, 2019, the Government completed its processing and production of the OVB file. R. 86 ¶ 1. But on December 2, 2019, the Government attested that it had identified additional files (the "Salah Files") that shared common subject matter with OVB and that it would begin processing the Salah Files. R. 120-1 ¶ 10. On September 23, 2020, the Court ordered the Government to process the Salah Files at a rate of 1,000 pages per month. R. 156 at 17. The Court also ordered the Government to search the FBI's electronic surveillance database ("ELSUR") for responsive documents, including documents related to the 179 individuals for whom Plaintiff had submitted privacy waivers. *Id.* at 18.

On December 29, 2020, the parties agreed that the issue of whether the Government fully discharged its FOIA obligations "with respect to production of the OVB file [was] ripe for disposition on summary judgment." R. 170 at 1.[1] The parties further agreed that the Government would "accompany [its] motion for partial summary judgment with a *Vaughn* index and/or declaration justifying [its] withholdings from the OVB file, but that, due to the voluminous nature of the file, the *Vaughn* index and/or declaration [would] be based on 100 samples from the OVB file." *Id.* at 2. Finally, the parties agreed that Plaintiff would contribute 75 documents to the sample and that the Government would contribute 25 documents. *Id.*

On March 3, 2022, the Government moved for partial summary judgment regarding the propriety of its redactions and withholdings in its production of documents from the OVB file. R. 183. The Government contended that it properly withheld information pursuant to FOIA exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), 7(E), and 7(F), that it properly withheld sealed records, and that it properly released all reasonably segregable information. R. 184 at 2. Pursuant to the parties' agreement, the Government attached a *Vaughn* index with detailed information for each of the documents (totaling 101 rather 100) in the parties' agreed upon sample set. R. 186-1. The index contained a brief description of each document and for each page of each document, the index identified which exemptions the Government had relied upon to justify withholding or redacting information. *Id.*

---

[1] Review of the Salah Files remains ongoing, R. 259 ¶ 1, and whether the Government fully discharged its FOIA obligations with respect to the Salah Files is not ripe for summary judgment at this time.

On November 4, 2022, Plaintiff moved for partial summary judgment in opposition to the Government's motion. R. 209. Plaintiff did not challenge the Government's reliance on exemptions 1, 3, 5, 7(A), 7(D), and 7(F) or that the Government properly withheld sealed records.[2] *See id.* Plaintiff raised the following issues. First, that the Government failed to search ELSUR for the privacy waiver names. R. 209 at 17–18. This first issue was resolved on March 5, 2024, when Plaintiff stated that "she does not challenge the adequacy of the search of the privacy waiver names in ELSUR, as described in the Government's Third Seidel Declaration." R. 253 at 1. Second, that the Court should review the 101 sample documents *in camera*. R. 209 at 42–43. This second issue was resolved on August 29, 2023, when the Court determined that it would review these documents *in camera*. R. 230. Third, that the withholdings and redactions from the OVB file were improper because the Government: (A) did not release all reasonably segregable information; (B) improperly relied on Exemptions 7(C) and 6; and (C) improperly relied on Exemption 7(E). R. 209 at 2–3. Summary judgment thus turns on these three narrow issues: reasonable segregation, Exemptions 7(C) and 6, and Exemption 7(E).

## Legal Standard

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 386 (7th Cir. 2015) (citations omitted). To that end, FOIA

---

[2] Plaintiff addressed Exemption 5 in one footnote, R. 209 at 40 n.12, but did not challenge its application.

4

requires federal agencies to disclose records to any person who "reasonably describes" the records sought and submits a request for the records "in accordance with [the agencies'] published rules." 5 U.S.C. § 552(a)(3)(A). "Agencies are, however, permitted to withhold records under nine statutory exemptions and three special exclusions for law-enforcement records." *Rubman*, 800 F.3d at 386 (citing 5 U.S.C. § 552(b)–(c)). FOIA requires that any "reasonably segregable portion of a record" be provided "after deletion of the portions which are exempt." 5 U.S.C. § 552(b).

FOIA provides district courts with jurisdiction "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). District courts determine the propriety of withholdings and redactions "de novo," meaning "without deference to the agency's disclosure decision." *Rubman*, 800 F.3d at 386 n.1. While FOIA's exemptions are to be "narrowly construed," courts must not fail to give them "meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Courts grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that affects the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *Scott v. Harris*, 550 U.S. 372, 380 (2007). On summary

5

judgment, courts must view facts "in the light most favorable to the [non-movant]," *id.*, and in FOIA cases, "in the light most favorable to the FOIA requester." *Stevens v. Broad. Bd. of Governors*, 2021 WL 1192675, at *2 (N.D. Ill. Mar. 30, 2021).

In FOIA cases, agencies have the burden of proof to demonstrate that their withholdings and redactions were proper. 5 U.S.C. § 552(a)(4)(B). Affidavits are sufficient to justify summary judgment under FOIA without *in camera* inspection where the affidavits "(1) describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of agency bad faith." *Kimberlin v. Dep't of Treasury*, 774 F.2d 204, 210 (7th Cir. 1985) (citations omitted). District courts have discretion to review the documents *in camera* to verify an agency's decision and "ensure that the exemption has properly been invoked." *Higgs v. United States Park Police*, 933 F.3d 897, 906 (7th Cir. 2019). In cases with a large volume of responsive documents, "representative sampling is an appropriate procedure to test an agency's FOIA exemptions claims." *Shurtleff v. United States Env't Prot. Agency*, 991 F. Supp. 2d 1, 8 (D.D.C. 2013) (citations omitted). "Representative sampling allows the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a *Vaughn* index." *Id.* "If the sample is well-chosen, a court can, with some confidence, extrapolate its conclusions from the representative sample to a larger group of withheld materials." *Id.*

## Analysis

### I. *In Camera Review*

The Court conducted an *in camera* review of the 101 documents in the sample set agreed upon by the parties. When conducting the *in camera* review, the Court reviewed the Government's withholdings and redactions for all claimed exemptions and compared each document with the *Vaughn* index. Based on this review and with the exception of one issue discussed below regarding Exemptions 7(C) and 6, the Court finds that the withholdings and redactions in the sample set were proper and that the Government has fully discharged its obligations under FOIA. The Court extrapolates this conclusion from the sample set to the larger set of all OVB files.

As discussed above, Plaintiff does not challenge the Government's use of exemptions 1, 3, 5, 7(A), 7(D), and 7(F) or that the Government properly withheld sealed records. As to these exemptions and the sealed records, the Court grants the Government's motion for partial summary judgment for two reasons. First, the Court found during its *in camera* review that the Government properly applied these exemptions and properly withheld sealed documents. Second, Plaintiff does not dispute these issues and "[f]ailure to respond to an argument . . . results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

Plaintiff challenges whether the Government released all reasonably segregable information, whether the Government improperly applied Exemptions 7(C) and 6, and whether the Government improperly applied Exemption 7(E). The Court addresses these issues in more detail below.

## II.    Reasonably Segregable Information

FOIA requires disclosure of "[a]ny reasonably segregable portion" of an otherwise exempt record. 5 U.S.C. § 552(b). An agency is not required to disclose portions of documents that are "inextricably intertwined" with exempt information. *Milton v. U.S. Dep't of Just.*, 842 F. Supp. 2d 257, 259 (D.D.C. 2012). And courts "should not order segregation when such a process would be significantly unwieldy." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th Cir. 1998); *see also Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977) ("[A] court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."). To justify withholding information on this basis, an agency must show with "reasonable specificity" why the information cannot be further segregated. *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002).

The Government met its burden to show with reasonable specificity that the withheld information could not have been further segregated. The Government provided a declaration from Joseph Bender (Acting Section Chief for the FBI's Record/Information Dissemination Section) which stated that "the FBI first-level reviewer [] conducted a line-by-line review of every page within the entire production at the time of processing" and that "an expert or supervisor also conducted a line-by-line review of every processed page to verify [that] the asserted exemptions [were] correct and to ensure that no further segregable information [could] be released."

8

R. 218-1 ¶ 34. This declaration, taken together with the detailed *Vaughn* index, was sufficient to show with reasonably specificity that the documents could not be further segregated. *See Johnson*, 310 F.3d at 776 ("[C]omprehensive *Vaughn* index, describing each document withheld, as well as the exemption under which it was withheld . . . [and affidavit attesting to] line-by-line review of each document withheld in full . . . [were] sufficient."). In addition, and as discussed above, the Court reviewed the sample *in camera* and verified that the documents had been properly withheld or redacted, and that all reasonably segregable information had been released.

Plaintiff argues that the Government failed to justify its withholding of documents outside the sample set. R. 209 at 22–25. But the parties agreed to limit summary judgment to a manageable sample set. And representative sampling is commonly accepted in FOIA cases. *See, e.g.*, *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1490 (D.C. Cir. 1984) ("The sampling procedure is appropriately employed [where] the number of documents is excessive and it would not realistically be possible to review each and every one."); *Blanck v. FBI*, 2009 WL 728456, at *2 (E.D. Wis. Mar. 17. 2009) (citations omitted) ("Representative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved."). Having reviewed the agreed sample set *in camera* and finding that the Government released all reasonably segregable information, the Court extrapolates this conclusion to the OVB file at large. *See Shurtleff*, 991 F. Supp. 2d at 8 ("If the sample is well-chosen, a court can, with some confidence, extrapolate its conclusions . . . to a larger group of withheld materials.").

Plaintiff also argues that the Government made inconsistent redactions and contends that this "cast[s] considerable doubt on its argument that it has demonstrated reasonable segregability, much less properly determined what was exempt from disclosure." R. 209 at 26. To make this argument, Plaintiff identifies duplicate documents (R. 209-10) where the Government inconsistently redacted the phrase "evidence has been collected" followed by a brief summary of the evidence; duplicate documents (R. 209-11 and R. 209-12) where the Government inconsistently redacted a date; and duplicate documents (R. 209-13) where the Government inconsistently redacted a location name. Plaintiff contends that these minor inconsistencies somehow invalidate all of the other redactions but fails to cite any precedent supporting this position. The Government reviewed approximately 33,120 pages over approximately 20 months and identification of a small number of minor inconsistencies does not warrant ordering the Government to review the documents again. *See Shapiro v. Dep't of Just.*, 2020 WL 3615511, at *38 (D.D.C. July 2, 2020) ("[P]laintiff's attempts to point to minor inconsistencies in FBI's processing of hundreds of thousands of records in response to his requests as evidence of either agency bad faith or admission of agency error will not be indulged.").

Finally, Plaintiff argues that the Government redacted publicly available information and contends that this "illustrates [the Government's] failure to demonstrate reasonable segregability." R. 209 at 27. To make this argument, Plaintiff identifies two FBI investigation memos (R. 209-16 and R. 209-17) which summarized publicly available news articles and where the Government redacted identifying

information from the summaries. But "information that identifies private citizens may be withheld even though the individual's identity might be pieced together independently or as a result of previous disclosures." *Lurie v. Dep't of Army*, 970 F. Supp. 19, 43–44 (D.D.C. 1997). *See also Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 550 (6th Cir. 2001) ("A clear privacy interest exists with respect to such information as names, addresses, and other identifying information even where such information is already publicly available."). Thus, the Government properly redacted these documents.

For these reasons and as to this issue, the Government's motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

## III.   Exemptions 7(C) and 6

Exemption 7(C) applies to "records or information compiled for law enforcement purposes" if their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Exemption 7(C) is more protective of privacy than Exemption 6." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994). Because Plaintiff does not dispute that the Government compiled the relevant documents and information for law enforcement purposes, *see* R. 209, the Government need "satisfy only the lower withholding standard contained in Exemption 7(C)." *Stevens v. U.S. Immigr. & Customs Enf't*, 432 F. Supp. 3d 752, 765 (N.D. Ill. 2020) (citations omitted).

11

When assessing Exemption 7(C), the Court is "required to balance the privacy interests against the public interests related to the release of the record." *Jackson v. U.S. Dep't of Just.*, 596 F. Supp. 3d 1119, 1124 (N.D. Ill. 2022). On the one hand, individuals have a "privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation." *Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995). On the other hand, the "relevant public interest in the FOIA balancing analysis" is the "extent to which the disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Stevens*, 432 F. Supp. 3d at 765.

Regarding the public interest, Plaintiff does not seek all information redacted under Exemption 7(C). She seeks only "the race, ethnic information, and nationality" of people who were investigated by the Government as part of OVB. R. 209 at 33. She seeks this information in order "to compile a statistical assessment," and she contends that this will further the public interest by shedding light on the extent to which OVB "targeted Arabs and Muslims." *Id.* Plaintiff's stated public interest falls within "the core purpose of FOIA . . . to expose what the government is doing." *Lakin L. Firm, P.C. v. F.T.C.*, 352 F.3d 1122, 1124 (7th Cir. 2003).

Regarding the privacy interest, Plaintiff points out that the Government did not categorically redact all racial identifiers for each document. R. 209 at 31. For example, in R. 209-18, the Government redacted all racial identifiers. But in R. 209-19 and R. 209-20, the Government did not redact the words "Arabic" and "Arab." And

in R. 209-23, the Government did not redact the words "Race: White" but redacted the word that comes after White, which was an ethnic descriptor of the subject. In response, the Government explains that "information related to race, ethnicity, or nationality is evaluated on a case-by-case basis, sensitive to context and amount of detail and that the FBI redacts such information only where its analysis concludes disclosure would risk identifying the individual." R. 218 at 23. In effect, the Government has already conducted its own balancing test and redacted identifiers only where it determined that the identifier posed harm to privacy interests. But district courts determine the propriety of redactions "de novo," and the Court need not defer to the Government's analysis. *Rubman*, 800 F.3d at 386 n.1.

Having reviewed the sample set of documents *in camera*, the Court finds that disclosure of only the race, ethnic information, and nationality of the subjects who were investigated as part of OVB will not increase the risk that these subjects can be personally identified. The documents will remain largely and properly redacted under Exemption 7(C) such that the release of these identifying characteristics will not marginally change the extent to which the documents at issue expose the identity of the subjects. Further, Plaintiff seeks this information to compile a statistical analysis and where "[d]isclosure of the [subject's] . . . nationality would result in the assembly of mere statistics[,] [i]t is unlikely that [the subject] could be identified based on [the] data set[]." *Heartland All. Nat'l Immigr. Just. Ctr. v. United States Dep't of Homeland Sec.*, 2016 WL 693540, at \*5 (N.D. Ill. Feb. 17, 2016), *aff'd sub nom.* 840 F.3d 419 (7th Cir. 2016).

In sum, the public interest in disclosing the race, ethnic information, and nationality of people investigated by the Government as part of OVB outweighs the privacy interests in withholding it. For this reason and as to this issue, Plaintiff's motion for partial summary judgment is granted, and the Government's motion is denied. Practically, this ruling applies as follows: the Government must remove redactions of the race, ethnic information, and nationality of people identified in the documents turned over by the Government as part of the OVB file. This ruling applies only to documents where it is possible to reasonably segregate the information. In other words, this ruling does not apply to documents or sections of documents that have been withheld in full.

## IV.    Exemption 7(E)

Exemption 7(E) allows agencies to withhold information that would disclose (1) "techniques and procedures for law enforcement investigations or prosecutions," and (2) "guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see also Allard K. Lowenstein Int'l Human Rights Proj. v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: Rather than requiring a highly specific burden of showing how the law will be circumvented, [E]xemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011).

14

The Government met this bar. First, the Government demonstrated that disclosure might create a risk of circumvention of the law. The Government provided a declaration from Michael Seidel (the Section Chief for the FBI's Record/Information Dissemination Section) that set forth seventeen discrete categories of information withheld pursuant to Exemption 7(E). R. 186 ¶¶ 104–151.[3] For each category, the Government specifically explained how disclosure would give criminals insight into investigation techniques and would logically aid criminals in circumventing the law. For example, the Government explained that disclosure of database information "would give criminals insight into the available tools and resources the FBI uses to conduct criminal and national security investigations" which would "expose possible intelligence gaps" and would "allow criminals to make informed decisions . . . to exploit these [gaps]." *Id.* ¶¶ 110–11. Or that disclosure of specific surveillance details "would allow current and future subjects of FBI investigations and other potential criminals to develop and utilize countermeasures to defeat or avoid different types of surveillance operations." *Id.* ¶ 124.

---

[3] The categories included: (1) sensitive file numbers; (2) database information, search criteria and results; (3) investigative strategies for utilization of particular evidence; (4) investigative focus and scope of specific investigations; (5) strategic collection and analysis of background information; (6) types and timing of investigations; (7) surveillance details; (8) identities and locations of FBI units and squads; (9) national security techniques; (10) undercover or covert operations and technique; (11) resource allocation; (12) internal FBI telephone numbers; (13) pen register and trap and trace devices; (14) non-public techniques utilized for financial analysis in money laundering investigations; (15) non-public operational directives and criteria; (16) data reflecting the relative usefulness of various investigative techniques; and (17) computer analysis response information.

Second, in the *Vaughn* index, the Government included a chart that listed each of the seventeen categories withheld pursuant to Exemption 7(E). R. 186-1. The chart was broken down by page number for each of the 101 sample documents and specified which of the seventeen categories justified the withholdings on each page. As part of the *in camera* review, the Court compared the *Vaughn* index with each of the 101 documents. The Court verified the accuracy of the *Vaughn* index and finds that the Government's withholdings under Exemption 7(E) were proper.

Plaintiff argues that the Government's justifications were conclusory and overbroad. R. 209 at 36–38. But far from conclusory, the Seidel Declaration and *Vaughn* index were detailed and specific. And the Court verified by *in camera* review that the withholdings were not overbroad.

Plaintiff also identifies certain documents and argues that the documents were either improperly or inconsistently redacted under Exemption 7(E). R. 224 at 16. With regard to the improper redactions, the redacted information is reasonably connected to at least one of the seventeen categories properly identified in the Seidel Declaration. The information in R. 209-14 is connected to the "investigative focus and scope." And the information in R. 209-21 and R. 209-22 is connected to "surveillance details." With regard to the inconsistent redactions, Plaintiff recycles this argument and relies on the same documents as already addressed by the Court. *Supra* Section II at 10. Again, Plaintiff's identification of minor inconsistencies does not warrant ordering the Government to re-review approximately 33,120 pages worth of documents.

For these reasons and as to this issue, the Government's motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

## Conclusion

For the reasons stated above, Plaintiff's motion for partial summary judgment (R. 209) is granted in that the Government must remove redactions of the race, ethnic information, and nationality of people identified in the documents turned over by the Government as part of the OVB file where it is possible to reasonably segregate the information. As to all other issues, Plaintiff's motion for partial summary judgment (R. 209) is denied, and the Government's motion for partial summary judgment (R. 183) is granted.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: May 3, 2024

17